**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 24 2014, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL T. DOUGLASS**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
**ROBERT J. HENKE**
**AARON J. SPOLARICH**
Office of the Indiana Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: K.R. (minor child); | ) ) ) |
| | ) |
| S.R. (Mother) | ) |
| | ) |
| Appellant-Respondent, | ) |
| | ) |
| vs. | ) No. 02A05-1308-JT-400 |
| | ) |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) |
| | ) |
| Appellee-Petitioner. | ) |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Charles F. Pratt, Judge
Cause No. 02D08-1211-JT-130

**February 24, 2014**

**PYLE, Judge**

## STATEMENT OF THE CASE

S.R. ("Mother") appeals the involuntary termination of her parental rights to her child, K.R.

We affirm.

## ISSUE

Whether the Department of Child Services ("DCS") presented clear and convincing evidence to support the termination of Mother's parental rights.

## FACTS

K.R. was born on January 22, 2012.  At that time, Mother and K.R. tested positive for cocaine.  DCS was notified and an assessor met with Mother at the hospital.  Mother admitted that she had used drugs the day before K.R.'s birth.  While in the hospital, staff advised Mother that she should not breastfeed K.R. because cocaine would continue to be in her system.  Hospital staff found Mother attempting to breastfeed K.R. on more than one occasion.  On January 26, 2012, DCS filed its verified petition alleging that K.R. was a child in need of services ("CHINS").  On the same day, the juvenile court held an initial/detention hearing and placed K.R. in foster care.

On February 16, 2012, DCS filed an amended CHINS petition.  The juvenile court conducted another initial hearing on February 21, 2012.  At that time, Mother admitted that portions of the CHINS petition were true, and the court found K.R. to be a CHINS.  On the same day, the court conducted a dispositional hearing and as part of the CHINS

proceedings, ordered that mother seek counseling, submit to random urinalysis testing as required by DCS, enroll in and complete GED courses, and refrain from the use of illegal drugs.

Following K.R.'s birth, Mother sought treatment at St. Joseph Hospital Behavior Health in order to address her substance abuse issues. Mother had previously attended therapy for substance abuse at this facility while pregnant with K.R. Mother was eventually discharged due to inconsistent attendance.

In February 2012, Mother began treatment services at Lifeline Youth and Family Services ("Lifeline"). Lifeline worked with Mother regarding substance abuse, education, relapse prevention, and other subjects. The Lifeline therapist stated that Mother's progress in treatment was inconsistent. Mother attended forty (40) sessions but cancelled or failed to appear twenty-one (21) times. The therapist also recommended that Mother attend regular Narcotics Anonymous meetings, get a sponsor, and maintain regular contact with the sponsor. The therapist was not convinced that Mother regularly attended meetings and never saw proof that Mother had obtained a sponsor. Lifeline desired to reduce the amount of sessions Mother attended, but it did not recommend stopping therapy.

On June 6, 2012, Mother was admitted into the Rose Home, a transitional living facility for women recovering from alcohol and drug issues. Rose Home discharged Mother two weeks after admission because of an altercation with another resident.

Mother began treatment at Park Center in July of 2012, though DCS initially referred Mother to Park Center in April of 2012. At first, Mother participated in therapy

sessions with her counselor three days per week. Eventually, Mother changed her schedule and was unable to meet with her original counselor. Mother received a new counselor, but she was not pleased with the change. In December of 2012, Mother stopped attending treatment sessions at Park Center. DCS filed a petition to terminate Mother's parental rights on December 3, 2012. The juvenile court held an initial hearing on December 4, 2012 and scheduled a fact-finding hearing. Mother resumed treatment with Park Center in January of 2013 with her original counselor.

Mother has been addicted to cocaine for eight years and has previously had her parental rights terminated with respect to another child because of her cocaine addiction. Throughout the CHINS proceeding, Mother tested positive for cocaine, marijuana, or both twelve (12) times. Mother submitted negative tests on two (2) occasions. However, two (2) of Mother's twelve (12) positive drug screenings occurred two (2) days after each negative test. Mother tested negative for controlled substances on November 9, 2012 and from January 2013 through April 4, 2013. No drug screens were conducted in December of 2012. When Mother established this period of sobriety, her Park Center counselor graduated Mother from the program in March of 2013 because Mother "had gotten what she needed" and the counselor did not "know if there's anything more that [Park Center could] do except say go see, go to . . . AA meetings [and] maintain a sponsor." (Tr. 124). Mother did continue drug testing through Park Center even though it was not required.

Mother has maintained a relationship with E.W., with whom she has a child. Sometime during the pendency of the CHINS proceeding, someone shot at a home where both Mother and E.W. were located. After the shooting, E.W. moved in with mother.

4

E.W. has a substance abuse problem as well as a criminal history containing substance abuse offenses.

The juvenile court conducted the termination hearing on April 23, 2010. On July 19, 2013, the juvenile court issued an order terminating Mother's parental rights to K.R., finding that DCS proved by clear and convincing evidence that the conditions that resulted in K.R.'s removal would not be remedied, and/or that the continuation of the parent/child relationship posed a threat to K.R.'s well-being. The court also found that termination of Mother's parental rights was in K.R.'s best interests. The juvenile court made the following relevant findings:

> [DCS] made referrals for [Mother's] participation in services that were designed to assist her in remedying the reason for removal of the child from her home. Specifically, [DCS] made a referral to Lifeline Youth and Family Services for [Mother's] participation in home-based services to assist with substance abuse education and counseling, relapse prevention, budgeting, communications and other issues. At the hearing on the Petition for Termination of the Parent/Child Relationship, the home-based services provider noted that addiction has affected so much of [Mother's] life that she needed all of the services provided by their agency. [Mother] participated in the services for approximately fourteen (14) months, however, only had forty (40) visits with the case manager. [Mother] cancelled or missed twenty-one (21) of the sessions that had been scheduled. The home-based provider noted that [Mother's] progress and participation has been inconsistent. [Mother] only completed two (2) of the five (5) homework assignments that she had been given by the service provider and the provider has indicated that [Mother] needed to complete her homework assignments in order to truly understand her addiction. Additionally, she advised that [Mother] needed to obtain a sponsor, regularly attend NA/AA meetings, and obtain a community support network because the support that she would receive through her participation in those services is essential to her maintaining sobriety. Although [Mother] has made some progress in home-based services, she has not benefitted from services provided. She did not have a sponsor for a period of time and just recently obtained one. She is not regularly participating in NA/AA meetings and/or providing documentation of

5

participation in the meetings as recommended. In order to maintain sobriety, a task which has been very difficult for [Mother] in light of her more than eight year addiction, and in light of her family history of addiction, she must obtain an AA/NA sponsor, regularly attend AA/NA meetings and obtain a community support network. Her failure to do so causes one to question her ability to maintain sobriety on a long term basis and her level of benefit from services. The service provider advised that [Mother's] therapy sessions may end in the near future, however, [Mother] still has addiction issues to address. Presently, [Mother] voices a desire to make recovery a priority, however, struggles in her attempts to make sobriety a priority and does not fully follow through with and/or invest in the services that will assist her in maintaining sobriety.

Additionally, [DCS] has required [Mother to] refrain from consumption of illegal drugs and that she submit to oral swab testing to show compliance. [Mother] tested positive for cocaine approximately twelve (12) times in the year of 2012. At the time of the hearing on the Petition for Termination of the Parent/Child Relationship, [Mother] testified that she had been sober for the past five to six months, however, this short period of sobriety must be measured against [Mother's] eight year history of addiction to cocaine and the Lifeline home-based therapist's testimony that only 10% of the people with a cocaine addiction maintain sobriety. In ruling on a Petition for Termination of the Parent/Child Relationship, the Court "must also evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation of the child." J.K.C. v. Fountain County Department of Public Welfare, 470 N.E.2d 88, 92 (Ind. Ct. App. 1984). "To be sure, the trial Court need not wait until the child is irreversibly influenced by a deficient lifestyle such that the child's physical, mental, and social growth is permanently impaired before terminating the parent/child relationship." Id. at 93.

The child, [K.R.], was born with cocaine in his system and [Mother] tested positive for cocaine at the time of his birth. [Mother] has another child born in May of 2005, who tested positive for cocaine and her parental rights to that child were involuntarily terminated. At the time of the initiation of the CHINS proceedings . . . [Mother] acknowledged that she had a long history of crack cocaine abuse that negatively impacted her ability to parent her child.

Additionally, [Mother] is currently involved in a relationship with a man who has a lengthy criminal history. This man was recently in a home with [Mother] where he was shot at. Despite this fact and the potential danger to herself and others in her home, [Mother] has permitted the man to reside in

6

her home. The decision to do so demonstrates a significant problem with judgment on the part of [Mother]—one which could pose a threat to the child's well being [sic] if he were placed in her care.

(App. 41-44). Mother now appeals.

## DECISION

Although parental rights are of a constitutional dimension, the law allows for termination of these rights when parties are unable or unwilling to meet their responsibility. *In re A.N.J.*, 690 N.E.2d 716, 720 (Ind. Ct. App. 1997). The purpose of termination of parental rights is not to punish parents but to protect children. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*, *cert. denied*.

In reviewing the termination of parental rights, we will neither reweigh the evidence nor judge the credibility of witnesses. *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010). We consider only the evidence most favorable to the judgment. *Id*. Where the trial court has entered findings of fact and conclusions of law, we apply a two-tiered standard of review. *Id*. We must determine whether the evidence supports the findings and then whether the findings support the judgment. *Id*. We will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *Id*. A judgment is clearly erroneous if the findings do not support the conclusions or the conclusions do not support the judgment. *Id*.

When DCS seeks to terminate parental rights pursuant to Indiana Code § 31-35-2-4(b)(2), it must plead and prove, in relevant part:

(A) that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6)

7

months under a dispositional decree.

\* \* \* \*

(B) that one (1) of the following is true:

    (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside of the home of the parents will not be remedied.

    (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

    (iii) The child has on two (2) separate occasions, been adjudicated a child in need of services.

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). Because subsection (b)(2)(B) is written in the disjunctive, DCS need prove only one of the three elements by clear and convincing evidence. *See Bester v. Lake Cnty. Office of Family and Children*, 839 N.E.2d 143, 153 n.5 (Ind. 2005). These allegations must be established by clear and convincing evidence. *I.A.*, 934 N.E.2d at 1133. If the trial court finds the allegations in a petition described in section 4 of this chapter are true, the court shall terminate the parent-child relationship. I.C. § 31-35-2-8(a).

    Mother argues that the juvenile court erred in terminating her parental rights. Specifically, she claims that DCS failed to present clear and convincing evidence to satisfy all of the elements of I.C. § 31-35-2-4(b)(2). We address each claim separately.

1. <u>Conditions Remedied</u>

The juvenile court should judge a parent's fitness to care for her child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. "However, a parent's habitual patterns of conduct must also be considered to determine whether there is a substantial probability of future neglect or deprivation." *Id*. "[A] juvenile court does not need to wait until a child is irreversibly influenced by a deficient lifestyle such that his or her physical, mental, and social growth is permanently impaired before terminating the parent-child relationship." *Castro v. Ind. Office of Family & Children*, 842 N.E.2d 367, 372 (Ind. Ct. App. 2006), *trans. denied*. When the evidence shows that the emotional and physical development of a child is threatened, termination of parental rights is appropriate. *Id*. DCS is not required to rule out all possibilities of change; rather it need establish only that there is a reasonable probability that the parent's behavior will not change. *In re Kay L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007).

Here, we acknowledge that at the time of the hearing, Mother was sober for five (5) months and had graduated from the Park Center addiction-counseling program. However, Mother tested positive for cocaine twelve (12) times throughout the CHINS proceeding. Mother's recent stretch of sobriety did not begin until DCS filed its petition to terminate Mother's parental rights. In addition, K.R. was born with cocaine in his system and the juvenile court has previously terminated Mother's parental rights to one of her other children for the same reason. This evidence reasonably allowed the juvenile court to find that the conditions that resulted in K.R.'s removal will not be remedied.

9

Mother's arguments against this evidence are simply a request to this Court to reweigh the evidence, which we will not do.

## 2. Best Interests

With regard to the "best interests of the child" statutory element, the juvenile court is required to consider the totality of the evidence and determine whether the custody by the parent is wholly inadequate for the child's future physical, mental, and social growth. *In re A.K.*, 924 N.E.2d 212, 223 (Ind. Ct. App. 2010), *trans. denied*. In making this determination, the juvenile court must subordinate the interest of the parent to that of the child involved. *Id.* Additionally, a child's need for permanency is an important consideration in determining the best interests of a child, and the testimony of the service providers may support a finding that termination is in the child's best interests. *McBride v. Monroe Cnty. Office of Family and Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003).

Here, K.R.'s court appointed special advocate ("CASA") testified that termination was in K.R.'s best interests because of Mother's lack of progress with her addiction throughout the CHINS proceeding and K.R.'s need for permanency. Again, while we acknowledge Mother's recent stretch of sobriety, Mother's progress must be subordinated to K.R.'s future physical, mental, and social growth. *See A.K.*, 924 N.E.2d at 223. Mother testified that six (6) months was the longest that she has remained sober throughout her cocaine addiction. Mother tested positive for cocaine twelve (12) times throughout the CHINS proceeding, and Mother's parental rights to another child were previously terminated in 2005 for the same reason. Mother's inconsistent progress with

10

her addiction simply will not allow her to provide the permanency and consistency that K.R. needs at this point in his life. DCS presented clear and convincing evidence that termination of Mother's parental rights were in K.R.'s best interests.

3. Satisfactory Plan

Finally, Mother argues that DCS failed to prove by clear and convincing evidence that a satisfactory plan was in place for K.R. However, Mother acknowledges that DCS stated that its plan for K.R. was adoption. In addition, precedent does not require DCS to state a more detailed plan. *JKC v. Fountain Cnty. DPW*, 470 N.E.2d 88 (Ind. Ct. App. 1984); *In re B.D.J.*, 728 N.E.2d 195 (Ind. Ct. App. 2000) (plan for adoption of a child in need of services may satisfy statutory obligation to have satisfactory plan in place). Mother cites no other authority for the proposition that DCS must present a more detailed plan. Accordingly, the trial court properly found that DCS's plan for placement through adoption services met the requirement for it to have a satisfactory plan for the care and treatment of K.R.

DCS presented clear and convincing evidence supporting the termination of the Mother's parental rights to K.R.

Affirmed.

MATHIAS, J., and BRADFORD, J., concur.